I would like to reserve three minutes for rebuttal, please. My client's appeal presents three issues, and with the Court's permission, I would like to focus on issues, one, sufficiency of the evidence, and three, the as-applied challenge to the mandatory 30-year minimum, and on issue two, the improper vouching. I'm ready to answer the Court's questions, but otherwise, I'll submit on the briefs on that particular issue. On the sufficiency issue, the issue has been generally pretty thoroughly briefed. What I wanted to focus on were two kind of main themes. One, you know, much of the dispute between the parties is about the meaning of the words dominating, significant, or motivating. That's a FLCA standard set by the, reaffirmed by the Court recently, and to me, the words mean slight degrees of the same thing, but ultimately, I think what they share between them is that the prohibited purpose has to be a motivating force, significant motivating force behind the decision to travel. It doesn't have to be the only one, but it has to be a significant motivating force behind it. Do you concede that plain error review applies to this argument? I would say that it doesn't matter whether it's plain error or sufficiency of the evidence because I think that the Jackson v. Virginia standard is so deferential that I think even, and this Court has said that even if you apply plain error review in sufficiency cases, the prong three and four of Alano are met. So you're only talking about whether there is error or it's plain, and the Jackson standard is so deferential to the jury verdict, so if the evidence meets that standard, then it's by definition plain. So you agree that FLCA should apply here? Well, yeah. I agree that that's a controlling standard of the Court. So then tell me why the facts here don't support this intent that this was a substantial purpose, the illicit sexual activity with her son was a substantial purpose. Well, I think the record only showed that this was a generic family vacation that was not structured around any increased opportunity to abuse. It wasn't designed to kind of make it more attractive, more easy for my client to do the act. I think this is a classic case of somebody who happens to be abusing somebody in their own vacation, which by all means is a generic family vacation, and that act happens to be during it. There, if you look at the texts with Tyrone between Pilsak, it seems to me that that undercuts your argument because, you know, they're talking about some topless pictures. They're also trying to get a photo picture, you know, in a hotel room so it looks like X. It just seems to me that the jury could take that and say, well, I see what was happening there, and it could be a significant purpose. It doesn't have to be the dominant purpose, for example. Why would that be upturned on a plain error review? Well, again, I will reiterate that I don't think whether it's plain error or sufficiency matters in this context. And two, I would respectfully disagree with that reading of pages 315 and 316 of the third volume of ER, which I think what Your Honor is referring to. Correct. Because by my reading, all it says, all Becker testified to is he received photos, generic family photos from my client. And then he mentions, oh, she said that she tried to take a picture of her son and somebody who was topless objected to her being photographed with a child in it. That's on page 315. Then separately, the prosecutor asked, well, did she eventually send you anything else? And then she said, well, eventually you get photographs that, you know, one of them is the child in the nude. The other one is somebody's hand is over the child's genitals. So I think we're kind of mashing two unrelated topics into one. And I know that, you know. That could be a reading, but it's not the only reading. Well, I would respectfully disagree. I think that, you know, obviously there's the potential evidence standard review allows reasonable inferences, but at some point reasonable inferences become speculation. And in this specific instance, I would say is that jamming those two pieces of testimony into that seems to me to cross the line from reasonable inference into speculation. Well, under sufficiently evidence or plain error review, either one, as you say, we look at the evidence the like most favorable to the government, correct? Do you agree?  Okay. So I guess my question, couldn't a jury infer that your client's motivating purpose in taking the trips included continuing to abuse her son while her husband was away in Death Valley, taking explicit photos of her son in a more generic setting, such as a Las Vegas hotel room, or continuing to groom her son by taking him to this topless event and nudist resort in Colorado? Why couldn't the jury reasonably infer that, especially looking at it in the light most favorable to the government? So I have two responses to that. Number one, I would respectfully push a little bit on the generic untraceable settings, because I think there's plenty of evidence that this trip was taken without any precautions of making it secret. You know, she's booking a hotel, not some secret motel where nobody can see him. She's going with her husband. She's still interacting with other people. She's sending a picture to another person. So there is definitely a record of her going. I don't think, just as a factual matter, I would push back a little bit on that. But more generically, I think that if we start inferring a significant or motivating or dominating purpose from the mere fact that, you know, there was some abuse before she traveled, and there was... Were there pictures taken before she traveled? Honestly, Your Honor, I do not recall. I don't think so. I didn't see it in the record. So I'm just wondering, could the jury reasonably infer that that was one of the motivating or significant factors, is to go somewhere other than the family home for the purpose of taking these pictures, and that that was not incidental? I would say that, okay, two things. A, I think without something other than the mere facts that some photos were taken before and some photos were taken after, I think that fact alone wouldn't be enough. And I, like you, I do not recall there being any evidence of photos being taken before. But even if they were, just the fact that something happened before and something happened after doesn't mean that one causes the other. I mean, that's a classical philosophical example. Just because B happens after A doesn't mean that A causes B. And I think we're getting to a point where we're reading the statutory language so broadly that it's going to end up with we're punishing sexual abuse while traveling, even though I think the Mann Act was ultimately focused on punishing the act of travel with the purpose of… That's a fair argument. I'm looking at record at 316, and there's a question to Becker. Were there any photos she sent you that you would describe as something other than a normal family vacation? His answer was yes. Question, what were those photos? She sent me pictures that she had taken of MV1 in his underwear and eventually naked. So I just think under the standard that we're under, I appreciate the argument that you're making, but it's whether a reasonable inference could be made of the purpose. If she had never done that before or this was the first time that she had done that, could the jury not reasonably infer that that was a motivating purpose? Not without more evidence and assuming that we're giving it… And what's your best case for that? Well I think we can go back all the way to Mortenson, which we started out with a dominant purpose. Everything else is a gloss on that, all the subsequent secret court decisions, and the Supreme Court has never changed that formulation. I don't have a good factual case that matches our facts to a T. I know the government cited a few cases where I think the facts are far more extreme and obvious, so I'm kind of in between those two guideposts. But I will still stand on the fact that you need something more than just because this is not the first time this happened, then we can affirm that it's a dominating, motivating or significant reason behind the travel. I mean, the jury is supposed to apply ordinary meanings of those terms, and I listed those in the briefing. I just think that… It seems like from your brief you're only challenging the sufficiency of the evidence for counts 3 and 4. So are you conceding that there was sufficient evidence for count 1? Well, it's not the issues that we challenged, right? Right. Then I view that as a concession, that there was sufficient evidence. So it seems when you look at the statutory language, it's the same, right? 2241 is crossing state lines with intent to engage in a sexual act with a person under 12. 2423 is knowingly transporting person under 18 with the intent the person engage in any sexual activity. So if you think it's enough for 2241, which is count 1, I don't see why that's not enough for count 3 and 4. And even the cases that you cite, right, Flukas had both a 2241 and a 2243 count, and they relied on the language of Lukashev, which was a 2241 count. So I guess I'm unclear. It's on why it would be sufficient for the count 1, but not 3 and 4. Frankly, it's not an issue that anybody has raised before, so I would have to think about my answer. Yeah, I was following up. If you look at that testimony, both count 1 and 3 are based on the Las Vegas trip, and we've been talking about that, about the photos and what was sent. And they both require the same underlying dominant, significant, or motivating purpose. So they're really coextensive there. And you have that testimony that these photos are taken, and she's sending them to this website, this illicit website. I don't know how you erase that. Well, I mean, I don't recall whether the act at issue in count 1 is the same count. I mean, the conduct underlying count 1 is the same conduct that underlies count 3 and 4. I would say that if they are really the same underlying sexual act, then I think the argument would infer that we would have to include all three acts. And it's just an oversight on my part in not referencing that act as well, because, I mean, if it's really the same conduct, I think the same argument would apply to all acts premised on the conduct occurring while traveling, assuming it has, again, I'm kind of operating from memory. Can I ask you, you wanted to submit on the briefs on the vouching. Do you think that claim is weaker than your sufficiency of the evidence and your Eighth Amendment claim? No, it's just I think it was kind of a strategic choice in terms of where I would apportion my time. I'm happy to go to that issue if it helps the court. Well, I had one other question. There was a sentence in your opening brief, in your reply brief, that really struck me. You said the crime didn't involve physical harm to the victim. And I just wanted to understand your reasoning for that statement. Was that because you thought the child consented to the sexual activity with the mother or that there wasn't like, you know, a broken bone or broken skin? Like what, what, what were you thinking? Child molestation doesn't involve physical harm to the victim? I was just curious because that statement kind of, you know, it stood out when I read it. Sure. I mean, I think I only made that in the context of the Eighth Amendment claim in only in analyzing whether the crime is grossly disproportionate to the punishment imposed. And, you know, nobody is disputing that the crime here is serious and has lasting impact on the child. But only if we compare it to murder, you know, I mean, I think it's fair to say that no life is taken if we're comparing what punishment you're imposing. I mean, nothing more than that. And if it comes off any other way, then it was not my intent. On the sentencing issue, the 30-year issue, for that threshold comparison that you need to make under Graham v. Florida, between the gravity of the offense and the severity of the sentence, where do you locate an exception to consider this defendant's personal characteristics at this threshold? Well, I don't think there has to be an exception. I think both Graham and Solem versus Helm talk about, as applied challenging, as involving all facts of the case. And I think Solem uses the example, like gives the generic examples of what the courts can use, and that refers to facts that show reduced moral culpability for the crime. Well, I mean, Solem was, they were emphasizing that the prior convictions related, they were all nonviolent, and they weren't crimes against person. That was the sort of benchmark that they were using. I think that maybe is the specific fact there, but I don't think they cabined the general examples to those facts. They're not saying, oh, these are the defendant's general characteristics anyway. They're just, they're saying we looked at these prior offenses, and they're not very consequential. That's what they were saying in Solem, isn't it? I read Solem, I guess more broadly than the E.R. does. I think it does refer to facts that bear on moral culpability of the defendant. Is there any case in this country in which the court has ruled that the 30-year mandatory minimum under the statute is unconstitutional? Well, two things. No, that would either be yes or no, or I don't know. Well, I would be, I'm not aware but. So the answer to your question is, no, I'm not aware of a case where the court ruled as the court said. But I think that I'm also unaware of any case where the court considered a case with the amount and the nature of mitigating evidence presented in this case, making the same argument as I do. And ultimately, Ace Amendment jurisprudence is a record-intensive analysis. So, I mean, it obviously would be more helpful to me if there was a case, similar facts that came out the way I want, but, and I don't have that, but I don't think that's the end of the analysis. I think you're out of time. I just wanted to quickly add one, so before I sit down, if the court has any interest in addressing how the argument I made interacts with the count one, I'm happy to submit further briefing. I think that the court points out what seems like a logical inference that if they share the same element, the same act, the evidence can be sufficient to one and not the other. Thank you. Thank you. Good morning, and may it please the court. Tanya Culbertson on behalf of the United States. On the transportation counts three and four, it would be incredibly rare to have direct evidence of intent. So we're always looking at what inferences the jury can draw from the other evidence in the case. And here, I think as the court has indicated with its questioning to opposing counsel, there is evidence from which the jury can draw those inferences. So first of all, we have the fact that Ms. Pilisek had been sexually assaulting her son before the trip. And in Stackhouse, which itself cites to Kinslow, this court said that case law establishes that a pattern of sexually assaultive conduct can support an inference of intent to commit sexual assault while traveling interstate. But that was a sex trafficking case, wasn't it? That was a sex trafficking case. That seems to be distinguished somewhat from what we have here. It's a little bit different facts, but I would point out that it cites to Kinslow. Kinslow was just a burglary and kidnapping case. And the evidence that the transportation of the daughter in that family that was kidnapped was transported for the purpose of illegal sexual activity was simply that the defendant had raped the mother in Arizona before he left the house. And so there I think you have the court said that it was sufficient to infer intent to you that a purpose was to have this available to him for sex while he was traveling. It seems like a purpose. And I take counsel's point. Are we simply criminalizing a conduct that was existing in one place and just continuing in another place? I'm really focused on the significant and motivating intent here. It looks like one of the arguments the government made is when they went from they go to Las Vegas first and then Colorado. Is that what it was? Las Vegas trip is in 2017. The Colorado trip is in 2018. Yeah. And that the Colorado trip came up at a much later time when they had already. A year later. Yes. So I just I'm trying to figure out why what is what makes this the significant and motivating factor? What's your best assessment? Absolutely. And I want to be clear. It's not just the evidence of the prior sexual assaults that we have here. As the court has already discussed, we have other evidence. We have the communications with Becker for the Las Vegas trip where she is sending family vacation snapshots to her best friend, Becker. But she also says, I'm trying to get a photo of me one. And then she sends him these child pornography photos of one taken in hotels with neutral backgrounds. And she's sending those to a person that she knows has a sexualized interest in children and collects and trades child pornography and indeed has posted child pornography on her site. So I think respectfully, my friend on the other side misses the point of the argument about the neutral background. She's not trying to take these photos in a neutral background so that Becker won't know that she took them. She's doing that. The jury could infer so that Becker can post them and trade them and they cannot be traced back to her as easily as they might be if they were taken in her own home. I mean, it's a very odd case because we have a situation where we know what things that happened before. But as to whether this is either dominant or significant or motivating to take that trip to Las Vegas, I think that what we're struggling with is that the evidence underlying that is pretty weak. Other than here I am now and there I was then. And now I'm in and in Las Vegas, you have the evidence with Becker. And just I want to say more about that evidence, but also I want to answer Chief Judge Murgia's question about the Colorado trip. I would say there we have evidence that part of the purpose of that trip was for Ms. Pilisic to meet Donovan, another friend from her website, who she knew had a sexualized interest in children and who she was also in an open relationship with, and to continue to groom her son, introduce him to those people, take him to a topless event with Donovan, take him to this nudist resort, create opportunities where she might be able to engage in the sexual activity with her son. She was already grooming him. She was already engaged in sexual activity. So I guess that's the area that I'm trying to just figure out. Why should we not? That is correct, but I do think there is evidence in the record that she did not have completely unfettered access to her son in her home. I know that sort of sounds counterintuitive, but she had two roommates in the home. So she had a roommate living upstairs in the home. She also had a roommate, excuse me, living in a unit downstairs. And she talks about how her husband was not okay with her prior incest and her preoccupation with incest. She says Josh did not take it well. That's at 3 ER 357. And so to the extent that traveling, she knows Josh is going to go on hikes to Death Valley. She's going to have these opportunities in hotel rooms by herself with her son, or to take her son on outings in Colorado with a friend who also shares the interests that her husband does not necessarily share. I think the jury can infer from that. Again, the jury does not have to infer from that. Colorado seems to be a different situation with all the things that went on there from Las Vegas. So what is the length then as the Vegas trip as being some, a motivating factor. Of the Vegas trip? Yeah. I think again, the most powerful evidence for Vegas is her communications with Tyrone Becker about the photographs. But again, I think. And so, but that's sort of, now I'm here. And we're talking about what motivated the travel to be there. Well, multiple motivations. And of course, it doesn't have to be the only motivation as. Right. What other motivations? I mean, what I see the Becker evidence. But then I'm left with, is there anything else? Is that really what it is? Well, we have her again. I know the grooming was ongoing, but the grooming certainly continued in the Las Vegas trip. So why wasn't that incidental? I guess it's because it was, you know, it was already happening, you know, so it's like she didn't need it to go there for it to happen. So why wasn't that just merely incidental? It was already happening. The jury could infer that she wanted it to continue to happen and that she was going to have more opportunities for it to Where's that? Where's that in the record? That is her saying Josh did not agree with it. This is her communicating with Becker. Here are the photos I've taken so far. I'm continuing to try to get, you know, the child pornography photos of him. I, again, I understand, you know, we have to look at each case on its facts and the facts may not be overwhelming, but they don't need to be overwhelming on sufficiency review, whether that's plain error, sufficiency review or regular sufficiency review. Again, the jury doesn't necessarily have to draw these conclusions, but here are reasonable jury certainly. Do you think dominant, significant, and motivating are synonyms? That's a little bit unclear to me, Your Honor. I don't know that that's necessarily clear from this court's cases. They seem to be used interchangeably, but even accepting the definitions that opposing counsel has provided significant, the definition he provided is having or likely to have influence or effect. I think that that that is that the one you said it was the words in the brief were substantial driving role. Certainly, but I think the dictionary definition that that my that's what he argued. I don't I think that is met having or likely to have a significant or to have an influence or effect is met. But whether you want to call it a dominant purpose, a motivating purpose, I think it's certainly a motivating purpose in terms of sort of spurring some of the action. So, you know, I'm not sure that parsing in between those three terms necessarily. It sounds like you think significant is your best. I think certainly significant is met. If it was just a purpose and not a significant purpose, do you agree your argument fails? I perhaps if it's just a purpose that's incidental to the travel, that it's just an opportunity that that happens. But I would point this course, not just an opportunity that happens. It's continuing. Right. What was going on? Right. Right. And I would point the court to to Lukashov, where it was found to be sufficient evidence that this this trucker long haul truckers defense was, well, I was traveling. Obviously, my purpose in travel was delivering the goods on the route that I have to do as a commercial trucker. And this child, you know, this opportunity just sort of happened where I had access to this child. It wasn't a significant purpose. But but this court said, no, that the evidence is sufficient there. I'm sorry, was in that case, was he sexually abusing the child in another state before he took him to the other state? No, traveling and the abuse begins in Montana and continues sort of across the trucker. But my point is there, we don't necessarily have. Very much evidence of, you know, this is a dominant purpose of my travel, and in fact, are dominant or significant purpose of my travel, and in fact, the defense was that it was not it was just incidental, it was happenstance. He has in a count one and three both relate to the Las Vegas trip. Is that right? That is right. And I didn't challenge count one, which requires that same dominant, significant or motivating factor. Is it in effect conceding that there is sufficient evidence for count three? I think it does, Your Honor. And, you know, obviously, the government didn't raise that point in the brief, because it's, you know, his choice, which issues to raise. And if the government sort of points out, well, by your argument, you know, you're not challenging count one, therefore, three and four must survive that, you know, then we would have raised it. And he, you know, could then argue that he could raise that on reply. So certainly, you know, it was his choice to brief it in that manner. But I do agree with you that count one, you know, if count one survives, that necessarily means that at least count three, the transportation in Las Vegas. Can we turn to the vouching issue? If you look at the, what, two sentences of the government's rebuttal argument, can you just tell us, it says, you know, despite her claims that Mr. Becker is lying, law enforcement finds corroborating evidence and the plea agreement. His story is further corroborated by the production images of MV1, as well as the vacation photos that he saved and the vacation photos that she saved, as well as MV1's independent disclosure regarding the production three years after the fact. So then what corroborating evidence is being referred to in the first sentence, if it's not the production images, the vacation photos? I think it is, Your Honor, and I understand you could read it either way. I think in that case, it's ambiguous, but I think it's just sort of inartful argument on rebuttal that she is talking about how unlikely it would be, how unlucky Ms. Pulisic would have to be to have been convicted of this, even though she was innocent, because her best friend gives evidence against her, gives a proffer, and what he has said is validated by evidence that the jury has seen. So not evidence that is outside of the record, but in fact, the digital evidence that the jury saw that was found on his computer. But I would point out that even, you know, an ambiguous statement cannot be plainly vouching, but even if this court were to conclude that this is plainly vouching, it would fail prongs three and four of plain error review. So considering all of the other evidence, including, you know, incontrovertible digital evidence that these photographs are of MV1, that they are taken on the trip, the metadata shows they are taken on the trip, during which Ms. Pulisic says she never left her son alone, as well as MV1's very powerful testimony, the testimony of the social worker who speaks to his demeanor when he was disclosing in 2020 and 2021. Ms. Pulisic's inconsistent testimony, both in the recordings and on the stand, that taking all of that together, there's no likelihood of a different outcome, even absent this unchallenged at the time remark during rebuttal. Turning quickly, because I see that I'm running short on time to the Eighth Amendment argument, I would just say the case that opposing counsel did not discuss is Harmelin, and Harmelin post-states Solem. Harmelin makes clear that individualized mitigation is not considered in the gross disproportionality analysis at the first step. That's made clear by Justice Scalia in his opinion, and by Justice Kennedy in the concurrence, which taken together are the of the court, that Solem is discussing circumstances, but as Judge McEwen said, that's circumstances of the crime, whether it's a passive crime, whether it's an active crime. Can I ask just on one question, since your time is running out? Yes, of course. Why should we not, on the last issue, the conditions, reverse and remand for resentencing for the condition to be revised versus just construing it as legally valid? The reason I wonder is that the release date for Ms. Pilsak is what, 21 years from now, and there's going to be a new AUSA, definitely a new defense lawyer, probably a new judge. Who is going to remember if there's no actual correction of the actual judgment and those conditions? That is certainly a path that the court could take. I don't know that we necessarily have an objection to that. Our point was simply that it is not a path that the court has to take. It hasn't taken it. In other cases, it is just simply said, we are going to construe this and the probation officer in the court below will construe this. And that's part of the record then? Right, correct. So, you know, this court's explanation of that in its disposition of this case, I think would become part of the record as Judge McEwen says, and then would guide future proceedings in the case if there are any. But it is certainly an option available to the court. If there are no further questions, we would ask that the court affirm the judgment. Thank you. Thank you. You have no time, but I'll give you a minute. I have a couple of points really briefly. If the court were to agree that count three is insufficient, then I think the court also has to find that count one is insufficient. And again, it sounds like it may have been my oversight in not including that and not seeing the relationship between the two. I think my client certainly shouldn't do more time than she has to because something I didn't notice when I was briefing the case. And I'm happy to submit further briefing to help the court decide that issue if that would be helpful. And we may be able to decide it independently in any event. Right. But to the extent that I would urge the court not to lay this rise and fall on me not noticing it. Can I ask you one question on the vouching? Why isn't other corroborating evidence that might have been referred to the metadata for the photos from the 2017 Las Vegas trip? Or Miss Pilosuk, when she was told by Agent McFarland that law enforcement had copies of the pornographic photos of MB1, she said, oh, you must have Becker's computer. And she said Becker didn't produce those images. Like, why isn't there more here? The fact that Wigdor didn't move into the house until February 2018. Um, why isn't there in the agent matching the hotel internet photos with the background of the images of the Las Vegas 2017 trip photos? Why isn't there other corroborating evidence here that could have been? I mean, we're speculating what the government was referring to in that rebuttal statement. Well, if the court is the court asking me in the context of a harmless error analysis or just I just saw. If it's ambiguous, I would agree with the government. We don't find error here. So. I just don't think it's ambiguous. I think when you read the statement, it first talks about the agreement not being breached because the government determined that he was being truthful. Again, I'm paraphrasing it. That's not exactly what he's saying, but that's pretty much how I read it. And then as an additional point, oh, by the way, there is also this stuff. And I will tell you that a this inexperienced prosecutor who apparently felt that it's not enough to just refer to the corroborating evidence, but had to refer to a determination of no breach and then to other things. And, you know, Becker has significant background, bad background of his own that the jury could have used to, you know, to be skeptical about testimony. So I think any corroboration that the government could put to his testimony would be beneficial to their case. And apparently they felt strong enough to say it. So I don't think this court should weigh that decision with any less weight than the prosecutor that. I don't know if that answered your question, but it's fine. Thank you. One last point, if the court can indulge me, the main difference between the Lukashov case and our case is that he was abusing a child of his girlfriend. He didn't have continued access to her. So when he took her on a trip along with him, he had a lot more access because the mother isn't there. That's not the same thing. You know, there is no evidence that my my client's husband stayed at home all the time was that there was any additional opportunities that she had access to the child that she wouldn't have in Seattle. This is pure speculation. And for that reason, I think those cases are materially different. And I asked the court to reverse both the convictions, I guess, in counts one, three and four and to remand for either retrial or resentencing without the mandatory minimum. Thank you. Thank you. Thank you. Oh, Mr. Robert, we off. Miss Culbertson, thank you very much for oral argument presentations here today. The United States versus Pulisic case is now submitted. Next.
judges: MURGUIA, McKEOWN, KOH